UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

```
-------------------------------------------------x
JOSHUA SCURRIA,                        :        CIVIL ACTION NO.
                                       :
              Plaintiff,               :
                                       :        JUDGE
                                       :
vs.                                    :
                                       :        MAGISTRATE JUDGE
HOUSTON ASTROS, LLC,                   :
HARRIS COUNTY-HOUSTON                  :
SPORTS AUTHORITY, and J. KENT          :        JURY TRIAL DEMANDED
FRIEDMAN in his official capacity as   :
Chairman of the Board of Directors of  :
the HARRIS COUNTY-HOUSTON              :
SPORTS AUTHORITY,                      :
                                       :
              Defendants.              :
-------------------------------------------------x
```

## COMPLAINT

Plaintiff, JOSHUA SCURRIA, by and through his undersigned counsel, hereby files this original Complaint and sues HOUSTON ASTROS, LLC, for injunctive and declaratory relief, attorneys' fees and costs pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §12182 *et seq*. ("Americans with Disabilities Act" or "ADA"); sues HARRIS COUNTY-HOUSTON SPORTS AUTHORITY (hereinafter referred to as the "HCHSA"), as the political entity which owns Minute Maid Park, for damages, injunctive and declaratory relief, attorneys' fees and costs, pursuant to Title II of the ADA, 42 U.S.C. § 12131 *et seq*.; and sues J. KENT FRIEDMAN in his official capacity as Chairman of the Board of Directors of the HCHSA, for injunctive and declaratory relief, attorneys' fees and costs pursuant to pursuant to Title II of the ADA. Accordingly, Plaintiff alleges:

## <u>JURISDICTION AND PARTIES</u>

1.  This is an action for relief pursuant to Title II and Title III of the ADA, 42 U.S.C. § 12101 *et seq.*

2.  This Court is vested with original jurisdiction over the Federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the property at issue in this lawsuit is located in the Harris County, in the Southern District of Texas, Houston Division.

4.  Plaintiff, Joshua Scurria, is a resident of Baton Rouge, Louisiana.

5.  Mr. Scurria is a qualified individual with a disability under the ADA. Mr. Scurria is diagnosed with Spinal Muscular Atrophy and uses a wheelchair for his primary means of mobility. Mr. Scurria was born this way.

6.  Due to his disability, Mr. Scurria is substantially impaired in several major life activities and requires a wheelchair to ambulate.

7.  Upon information and belief, Houston Astros, LLC ("Astros") is a limited liability company doing business in Houston, Texas.

8.  Upon information and belief, Astros is domiciled at 501 Crawford Street, Houston, Texas 77002.

9.  Upon information and belief, the HCHSA is the political entity which owns the real property, improvements, and programs which are the subject of this action, to wit: Minute Maid Park, located at 501 Crawford Street, Houston, Texas 77002 (hereinafter "MMP" or "the Property").

2

10. Upon information and belief, J. Kent Friedman ("Freidman"), named in his official capacity as the Chairman of the Board of Directors of the HCHSA, is the official with chief executive power with respect to the HCHSA, and bears responsibility in his official capacity as chief executive for administering, operating, and maintaining the HCHSA's public goods and services.

11. Friedman could vote in favor of a proposal to modify MMP to comply with the ADA.

12. While Friedman is not the sole participant in the application of the challenged statute, he has definite responsibilities relating to the application of the challenged statute. While Friedman cannot unilaterally authorize the capital expenditures to bring MMP into compliance with the ADA, he holds one of the nine votes that could vote to effectuate those changes Therefore, Friedman can favorably redress Plaintiff's injury.

13. Upon information and belief, Astros operates the programs, services, and activities which are offered at MMP.

14. Upon information and belief, Astros operates the programs, services, and accommodations offered at MMP during concerts and other live events.

15. Upon information and belief, Astros is responsible for violations of Title III of the ADA at the Property that deal with operations during concerts.

16. Astros is obligated to comply with the ADA.

17. HCHSA and Mr. Friedman are responsible for any violations of Title II of the ADA at the Property and are also responsible for the actions of its contractor, Astros.  *See* 28 C.F.R. § 35.130(b)(1) ("a public entity, in providing any aid, benefit, or service, may not, directly

*or through contractual, licensing, or other arrangements*, discriminate against individuals with disabilities.") (emphasis added).

18.    Mr. Friedmans is sued as the Chairman of the Board of Directors of the HCHSA pursuant to the doctrine of *Ex parte Young*.

19.    All Defendants are obligated to comply with the ADA.

## FACTUAL STATEMENT

20.    Mr. Scurria realleges and reavers Paragraphs 1 - 19 as if they were expressly restated herein.

21.    The Property is a place of public accommodation, subject to the ADA, generally located at 501 Crawford Street, Houston, Texas 77002.

22.    MMP is an events and exhibition venue, located in Houston, Texas.

23.    MMP is used for hosting sporting events and live entertainment events.

24.    MMP regularly hosts concerts featuring well-known artists like Elton John, Billy Joel, Paul McCartney, and Madonna, among others.

25.    On September 13, 2022 Lady Gaga brought her Chromatica Ball tour to MMP.

26.    Mr. Scurria is a Lady Gaga fan and decided to travel to Houston, Texas from Baton Rouge, Louisiana so he could see one of his favorite artists live in concert.

27.    Mr. Scurria attended concert with his friend and aid, Sadie Ragusa

28.    Mr. Scurria purchased tickets in the sole ADA section of the "floor."

29.    Mr. Scurria arrived at MMP to attend Lady Gaga's Chromatic Ball concert on September

13, 2022. Mr. Scurria went to his seat, which was located at the very back back of the field

in the accessible-designated seating area (circled in red below).



30.    The accessible-designated seating area was not raised and was positioned directly behind

the conventional seating area.

31.    There was no other accessible-designated seating area on the "floor." Rather, the sole

accessible-designated seating area on the "floor" is located as far away from the stage as

possible with no seating located behind it.

32.    The accessible-designated seating area contained no ropes or other physical barriers

separating the accessible-designated seating area from other concert attendees.

33.     During the Lady Gaga concert, Mr. Scurria's view was constantly blocked by able-bodied concert attendees standing on their chairs – not just during applause. Mr. Scurria is unable to stand so he could do nothing to see over the people that were blocking his view. Compared to the seats in front of him, Mr. Scurria's accessible-designated seating was shallow.

34.     Mr. Scurria complained to attendants about the patrons standing on chairs and the attendants told some patrons to not stand on the chairs, but not all the patrons standing on the chairs.

35.     Also, because of the lack of ropes or other methods of cordoning off the accessible-designated seating area, able-bodied concert attendees were wandering through the accessible designated seating area, further blocking and interrupting Mr. Scurria's view of the concert. To be clear, Mr. Scurria positioned his wheelchair a foot or two behind the row of able-bodied chairs in front of him as he did not want to be right up against those seats so he could see the stage. However, because there were no ropes or barricades cordoning off the ADA section, other patrons wound up walking in front of Mr. Scurria all night, blocking his view.

36.     Mr. Scurria complained to attendants about folks passing through the ADA section, but they had no idea what to do or how to respond to his complaints.

37.     Mr. Scurria was upset by the constant interruptions of the concert by standing patrons and patrons passing through the accessible-designated section. Mr. Scurria was unable to fully enjoy the Lady Gaga Chromatica Ball concert.

38. Mr. Scurria was very distraught and upset over this incident.

39. Mr. Scurria plans to and will visit the Property in the future as a patron but fears he will replay this experience and will be unable to enjoy any concerts because the placement of the accessible-designated seating and constant interruption of his view by able-bodied patrons.

40. Mr. Scurria intends to return to MMP to attend other concerts.

## COUNT I: VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AS TO ASTROS

41. Mr. Scurria repeats and realleges all preceding paragraphs in support of his claim.

42. At all times relevant to this action, Title III of the ADA has been in full force and effect and has applied to Astros' conduct.

43. Title III of the ADA states, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." *See* 42 U.S.C. § 12132.

44. At all times relevant to this action, Mr. Scurria was an individual with a disability within the meaning of the ADA and had substantial limitations to the major life activities of hearing and seeing, as defined by 42 U.S.C. § 12132.

45. Under the ADA, a public accommodation is required to modify its policies, practices, or procedures to mitigate any disparate impact upon persons with disabilities. 28 CFR § 36.302(a).

46. Public accommodations must also take affirmative measures to ensure that such persons have an equal opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that are available from that public accommodation. 42 U.S.C. § 12182; 28 CFR §§ 36.202(b), 36.201(a), 36.203(a), 36.302(a).

47. The ADA's implementing regulations contain specific mandates for public accommodations regarding ticketing, accessible seating, and ticket sales. 28 CFR § 36.302(f).

48. U.S. Department of Justice ("DOJ") regulations require that assembly areas, like the Property at issue, provide wheelchair spaces with clear lines of sight. "Wheelchair spaces shall provide spectators with choices of seating locations and viewing angles that are substantially equivalent to, or better than, the choices of seating locations and viewing angles available to all other spectators." 2004 ADAAG at 221.2.3.

49. Further, Advisory Rule 221.2.3 states that "while individuals who use wheelchairs need not be provided with the best seats in the house, **neither may they be relegated to the worst**" (emphasis added).

50. In assembly areas "where spectators are expected to stand during events," as routinely occurs during concerts, "spectators seated in wheelchair spaces shall be afforded lines of sight over the heads of standing spectators in the first row in front of wheelchair spaces." 2004 ADAAG at 802.2.2.1.

51. Additionally, "where standing spectators are provided lines of sight over the shoulders and between the heads of spectators standing in the first row in front of their seats, spectators seated in wheelchair spaces shall be afforded lines of sight over the shoulders and between

the heads of standing spectators in the first row in front of wheelchair spaces." 2004 ADAAG at 802.2.2.2.

52.   By locating the wheelchair accessible seating at the back of the floor seating where the views would be blocked by standing patrons, Astros failed to comply with the specific requirements of 2004 ADAAG at 802.2.2.1.

53.   Mr. Scurria was essentially relegated to the "worst seats in the house" because he was unable to see the stage over the heads of patrons standing in front of him and he was regularly disturbed by other patrons walking through the wheelchair accessible section.

54.   Further, the accessible-designated seating on the "floor" was located in the worst part of the floor – located the furthest from the stage.

55.   At the December September 13, 2022 Lady Gaga Concert, Mr. Scurria was further discriminated against by being subjected to the humiliation, fear, and anxiety of not being able to see the stage or enjoy the concert without the constant interruption of other patrons walking through the accessible designated section.

56.   Mr. Scurria has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Mr. Scurria is entitled to have his reasonable attorneys' fees, costs, and expenses paid by Astros pursuant to 42 U.S.C. § 12205.

## COUNT II: VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AS TO HCHSA AND FREIDMAN

57.   Mr. Scurria adopts and re-alleges the allegations contained in paragraphs 1-51 as if fully stated herein.

58.   Mr. Scurria continues to desire to visit the Property, but fears that he will experience serious difficulty again in light of the failures of Astros to make adequate and sufficient

accommodations for Mr. Scurria as a wheelchair user. As the owner of the Property, HCHSA and Friedman are vicariously liable for any discrimination which occurs at the Property under the ADA by Astros.

59. HCHSA and Friedman have failed to adopt and implement adequate and sufficient policies and procedures and are therefore vicariously liable for all policies and procedures which are used by Astros at the Property that deny Mr. Scurria meaningful access to the goods, services, and programs which are offered at the Property.

60. Upon information and belief, the HCHSA and Friedman control the seating layout at the Property and/or provide the seating infrastructure at the Property, such that they are independently liable for ADA violations at the Property.

61. HCHSA and Friedman have discriminated against Mr. Scurria by denying him full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by 42 U.S.C. §12132 and its implementing regulations at 28 C.F.R. § 35.101 *et. seq*.

62. Specifically, the actions set forth in paragraphs 30-34 show that Astros is effectively excluding wheelchair patrons from obtaining the same benefits available to ambulatory patrons, in violation of 28 CFR §§ 35.130(a), 35.130(b)(1)(i), 35.130(b)(1)(ii), 35.130(b)(3)(i), and 35.130(b)(7)(i).

63. HCHSA and Friedman have discriminated against Mr. Scurria and others similarly situated in violation of the ADA by excluding and/or denying Mr. Scurria the full and equal benefits of their services, programs, and/or activities by failing to, *inter alia*, make adequate and sufficient accommodations for mobility impaired individuals such as Mr. Scurria, as detailed above.

64.     Upon information and belief, HCHSA and Friedman continue to discriminate against Mr.
        Scurria, and all those similarly situated, by failing to make reasonable modifications in
        policies, practices, or procedures, when such modifications are necessary to afford all
        offered   goods, services, programs, activities, facilities, privileges, advantages or
        accommodations to individuals with disabilities; and by failing to make such efforts that
        may be necessary to ensure that no individual with a disability is excluded, denied
        services, programs, and/or activities, segregated or otherwise treated differently than
        other individuals.

65.     Upon information and belief, Mr. Scurria, and all other individuals similarly situated, have
        been denied access to, and have been denied the benefits of services, programs and/or
        activities of HCHSA, and have otherwise been discriminated against and damaged by
        HCHSA and Friedman because of HCHSA and Friedman's discrimination, as set forth
        above. Mr. Scurria and all others similarly situated will continue to suffer such
        discrimination, injury, and damage without the immediate relief provided by the ADA as
        requested herein.

66.     42 U.S.C. § 12133 provides: "[t]he remedies, procedures, and rights set forth in section
        794 of Title 29 shall be the remedies, procedures, and rights this subchapter provides to
        any person alleging discrimination on the basis of disability in violation of section 12132
        of this title."

67.     Mr. Scurria has retained the undersigned counsel and is entitled to recover compensatory and nominal damages, reasonable attorneys' fees, costs, and litigation expenses from HCHSA and Friedman pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 35.175.[1]

68.     Mr. Scurria is without adequate remedy at law and is suffering irreparable harm.

69.     Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant Mr. Scurria injunctive relief including an order that HCHSA and Friedman alter the facilities at Property and alter their policies at the Property to make the programs and/or activities offered there readily accessible to and useable by Mr. Scurria and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as HCHSA and Friedman cure their violations of the ADA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, and requests the following declaratory and injunctive relief, compensatory damages, and fees and costs:

A.  Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' actions subjected Mr. Scurria to unlawful discrimination in violation of the ADA;

B.  That this Court enter an Order directing Defendants to alter their policies, practices, and/or procedures to make the Property accessible to and useable by individuals with a disability who use wheelchairs to the full extent required by the ADA;

---

[1] Mr. Scurria is <u>not</u> seeking monetary damages from Friedman. With regards to Mr. Scurria's request for nominal damages, it is his position that even an award of nominal damages would confer significant civil rights to the public, as a judgment in their favor against Astros, regardless of the amount, would deter Astros from discriminating against individuals with disabilities in the future.

C. Award to Plaintiff:

i.      Compensatory and nominal damages pursuant to Title II of the ADA;

ii.     Reasonable costs and attorneys' fees pursuant to Title II and III of the ADA;

iii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law; and

iv.    Any and all other relief that this Court finds necessary and appropriate.

Date: December 19, 2022

Respectfully submitted,

/S/ ANDREW D. BIZER

**BIZER & DEREUS, LLC**
ANDREW D. BIZER (BAR NO, LA30396)
GARRET S. DEREUS (Bar No. LA35105)
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996
andrew@bizerlaw.com
gdereus@bizerlaw.com
*Attorney in Charge*

***AND***

Martin J. Cirkiel
Attorney State Bar No.: 00783829
Federal ID No. 21488
CIRKIEL LAW GROUP, P.C.
f/k/a Cirkiel & Associates, P.C.
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658 [Telephone]
(512) 244-6744 [Direct Line]
(512) 244-6014 [Facsimile]
marty@cirkielaw.com
www.cirkielaw.com